IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ERIC EDWARD GARVEY

        OPINION AND ORDER

   v.

        14-cv-85-wmc

UNITED STATES OF AMERICA

        10-cr-133-wmc

---

Eric Edward Garvey has filed a motion under 28 U.S.C. § 2255 to vacate, set aside or correct the sentence that he received in *United States v. Garvey,* Case No. 10-cr-133. The respondent filed a brief in opposition. After considering all of the pleadings, the record and the court's own recollection of the underlying proceedings, the motion must be denied for reasons set forth below.

BACKGROUND

A grand jury returned a four-count indictment charging Garvey with knowingly and intentionally distributing a mixture or substance containing methamphetamine, a Schedule II controlled substance on April 21, April 30, May 8 and May 27, 2008, all in violation of 21 U.S.C. § 841(a)(1). After a trial in early February of 2011, a jury found Garvey guilty as to all four counts.[1]

To establish that the substance was in fact methamphetamine, the government notified Garvey's trial counsel that it planned to offer the expert testimony of John Nied, a controlled substance analyst and technical unit leader at the Wisconsin State Crime Laboratory in Wausau, Wisconsin. Nied did not personally analyze the substances. Rather,

---

[1] In addition to the sentence that he received in this case, Garvey was found guilty in a multi-count indictment stemming from a conspiracy to transport and sell property, Case No. 10-cr-134 (W.D. Wis. July 15, 2011). Garvey filed a separate motion under 28 U.S.C. § 2255 to challenge that conviction, which was denied as untimely. *See Garvey v. United States*, Case No. 14-cv-85 (W.D. Wis.).

Andrew Schleis, who no longer worked for the department, conducted the analysis.

As Nied testified at trial, he analyzed the test data and notes Schleis created consistent with lab protocol, which included charts generated by instruments in the lab. After reviewing the data, Nied concluded that the substances were methamphetamine. Rather than objecting to the admission of Nied's expert testimony, Garvey's counsel cross-examined him extensively about the charts that he relied upon in reaching his conclusions. (Dkt. #92, pp. 150-57.) In addition to Nied's expert testimony, the government submitted other evidence that the substances were methamphetamine, including taped conversations of Garvey commenting on the quality, price and amount of methamphetamine sold during each controlled buy. (*See* Ex. List, dkt. #101.)

Following the jury's guilty verdict, Garvey asked for and received new counsel for sentencing. (Dkt. #10.) A presentence investigation report ("PSR") was filed on April 15, 2011, that calculated a guideline range of 46 to 57 months based on an offense level of 16 and a Criminal History Category VI. (Dkt. # 65, at 20.)

Garvey's sentencing counsel filed objections to seventeen paragraphs of the PSR. Three of those objections -- to paragraphs 39, 41 and 42 -- relate to the release date for a prior crime that added points to his criminal history calculation and Garvey seeks to raise them again here. Paragraph 39 described a conviction on December 27, 1990, for stealing a car and damaging a squad car in the process of evading arrest. Garvey was paroled on that offense on March 1, 1996, which he completed on October 22, 1999. In his original objection, Garvey's sentencing counsel asserted that the actual parole date was June 12, 1994, although the same counsel acknowledged that the difference "does not affect the three

2

criminal history points applied to him . . . because 6/12/94 is approximately 14 years from the date of the offense for which he is being sentence[d] and therefore within the 15 year window for sentences of this type to be considered." (Dkt. #66, at 2.)

Paragraph 41 described a Minnesota conviction on March 13, 1992, for motor vehicle theft, on which Garvey was released from custody on February 17, 1994. (PSR Addendum, dkt. #68, p. 4.) At sentencing, Garvey objected to the release date, believing that his September 25, 1991, arrest date -- not the date of his conviction -- should have been the starting point to determine the relevance of this conviction to his criminal history calculation.

Finally, paragraph 42 described a Wisconsin conviction for escape. The PSR stated that he was released from custody in that case on March 1, 1996. The objection stated, in part, that Garvey's mandatory release day was 16 months from his arrest on September 12, 1991, which would have been January 12, 1993. The Addendum to the PSR restated that the Wisconsin Department of Corrections computer records provided a release date of March 1, 1996, but that the actual prison file was destroyed and there was no further available documentation. (Dkt. #68, at 4.)

Before arriving at a sentence, this court considered the PSR, objections, the Addendum to the PSR and the parties' arguments. The court agreed with Garvey that the applicable guidelines range was 41 to 51 months and sentenced him to concurrent terms on all counts of 42 months. (Dkts. #79, #89.) In its statement of reasons, this court specifically addressed the criminal history items, concluding that only the objection to Paragraph 42 of the PSR had merit. (Dkt. #78, at 4.) This ruling was in recognition of the fact that "because the original conviction record could not be located," leaving "no reliable

information" about the actual length of the sentence for escape and held, therefore, that the conviction should not be included in Garvey's criminal history score. (*Id.*) The court, therefore, reduced his Criminal History score from a Category VI to a Category V, which contributed in part to a sentence of 42 months, near the low end of the revised 41 to 51 month guideline calculation.

On direct appeal, Garvey's appellate counsel argued that the admission of Nied's testimony amounted to plain error, but the Court of Appeals for the Seventh Circuit disagreed. *See Garvey v. United States*, 688 F.3d 881, 884-85 (7th Cir. 2012). In its ruling, the Seventh Circuit harkened back to its opinion in *United States v. Turner*, 591 F.3d 928. 931 (7th Cir. 2010), upon which the government relied. In *Turner*, the court held that the admission of testimony by an expert witness based in part on an analyst's report to reach his opinion did not result in a Confrontation Clause violation, reasoning that the report itself was not introduced into evidence. *Id.* Following oral argument, however, the Seventh Circuit acknowledged that the Supreme Court vacated the *Turner* decision in *Williams v. Illinois*, __ U.S. __, 132 S. Ct. 2221 (2012), holding that there was no Confrontation Clause violation where a forensic specialist testified about a DNA profile produced by an outside laboratory.

In reviewing the *Williams* decision, the Seventh Circuit noted that the Supreme Court did not clarify the Confrontation Clause issue at hand. Accordingly, the Seventh Circuit held that Nied's expert testimony did not amount to plain error because the jury considered an "abundance of other evidence establishing both that Garvey sold methamphetamine during the four controlled buys and the quantity sold in each transaction." *Garvey*, 688 F.3d at 885-

86. The Supreme Court subsequently denied cert, *Garvey v. United States*, 133 S. Ct. 1305 (Feb. 19, 2013), and this motion followed.

OPINION

A motion for relief under 28 U.S.C. § 2255 seeks "an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United* States, 476 F.3d 518, 520 (7th Cir. 2007) (citing *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006)). Accordingly, a prisoner must show that the district court sentenced him "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or that it is otherwise subject to collateral attack." Relief under § 2255 is appropriate only for "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (quoting *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991)).

Here, Garvey contends that he is entitled to relief pursuant to § 2255 because he was denied effective assistance of counsel in two respects: (1) his trial counsel failed to object that the testimony of the government's expert witness violated his right to confront all witnesses against him; and (2) his sentencing counsel failed to object to the inclusion of certain prior convictions in his criminal history score. Claims for ineffective assistance of counsel are analyzed under the well-established standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under the *Strickland* standard, a defendant must

5

demonstrate both constitutionally deficient performance by counsel *and* actual prejudice as a result of that deficiency.  *See Williams v. Taylor*, 529 U.S. 390, 390-91 (2000).  In other words, "a defendant must show both that his attorney performed below minimal professional standards and that the substandard performance prejudiced him."  *Northern v. Boatwright*, 594 F.3d 555, 560 (7th Cir. 2010).  For the reasons explained below, Garvey fails to make either showing with respect to each of his two, separate claims for ineffective assistance of counsel.

I.   Nied's Expert Testimony

First, Garvey contends that his attorney's failure to object to the introduction of Nied's testimony amounts to ineffective assistance of counsel, but he has not established that his attorney's failure to object was actually deficient for multiple reasons, nor that it caused him any actual prejudice.

Where the law is unsettled, an attorney cannot be faulted for failing to anticipate future changes.  *Groves v. United States*, 755 F.3d 588, 593 (7th Cir. 2014).  At the time of, and even after, Garvey's conviction, the law related to the admissibility of expert testimony substantiated in part by the work of another expert not subject to cross-examination, such as Nied's, was unclear at best and clearly against Garvey at worst.  In rejecting Garvey's arguments on appeal -- as well as in subsequent decisions -- the Seventh Circuit's discussion of *Williams* highlights and bemoans the current uncertainty under the law.  *Garvey*, 688 F.3d at 884-85; *United States v. Turner (Turner II)*, 709 F.3d 1187, 1189 (7th Cir. 2013) ("the divergent analyses and conclusions of the plurality and dissent … sow confusion as to precisely what limitations the Confrontation Clause may impose when an expert witness testifies about the results of testing performed by another analyst, who herself is not called to

testify."). Given the Seventh Circuit's ruling in Garvey's direct appeal, testimony such as Nied's would, if anything, appear *not* to violate the Confrontation Clause. *See also United States v. Maxwell*, 724 F.3d 724, 727 (7th Cir. 2013) (no plain error where witness reviewed the data generated by another analyst and reached an independent conclusion, but noting that *Garvey* was a closer analysis because Nied testified directly from inadmissible notes and charts).

Garvey asks the court to adopt the Supreme Court's analysis in *Melendez v. Massachusetts*, 557 U.S. 305 (2009), and *Bullcoming v. New Mexico*, 131 S. Ct. 2705 (2011), but both cases are factually distinguishable. In each case, a report was submitted into evidence, despite its author being unavailable as a witness, and in each decision, the Court held that admission into evidence of the report itself implicated the right to confront the author of the report. *Bullcoming*, 131 S. Ct. at 2710; *Melendez,* 557 U.S. at 309.

Here, no expert report was ever admitted into evidence; instead, Nied testified based on his own expert opinions, albeit informed by Schleis's data and notes. Accordingly, Nied's testimony was independent of the documents Schleis created. As Justice Sotomayor emphasized in her concurrence in *Bullcoming*, the Court had not spoken on the "constitutionality of allowing an expert witness to discuss others' testimonial statements if the testimonial statements were not themselves admitted as evidence." 131 S. Ct. at 2722. Because there was no direct evidence from Schleis that would require his cross-examination under the Confrontation Clause, the decisions in *Bullcoming* and *Melendez* have no direct bearing on the admissibility of Nied's testimony here.

Moreover, to determine ineffective assistance, the performance of Garvey's counsel

must be reviewed as a whole. *Groves*, 755 F.3d at 593. Garvey's counsel may not have objected to Nied's testimony, but he *did* cross-examine him in a way that attempted to call his expertise into question. (Dkt. #92, at 144-57) In particular, counsel questioned Nied about (1) how the substances were weighed, (2) how to analyze the mass spectrometry charts properly to identify the substance, and (3) whether Nied would be able to identify different samples from the same batch of drugs.

Moreover, Garvey has not suggested (much less proven) that his trial counsel's decision not to object to Neid testifying, his cross-examination, or any other claimed failure was somehow deficient, much less prejudicial. For example, there is *no* evidence that his counsel's failure to object to Nied's testimony prejudiced the outcome. Not only has the government submitted additional evidence beyond Nied's testimony that indicated that the product was actually methamphetamine, but as noted on his direct appeal, the court admitted into evidence "taped conversations of Garvey commenting on the quality, price, and amount of methamphetamine sold." 688 F.3d at 885-86. Garvey does not call into question this uncontroverted evidence. Having established neither that his trial counsel committed plain error, nor that he would not have been convicted of the four charges of selling methamphetamine without Nied's testimony, Garvey has not established entitlement to extraordinary relief.

## II. PSR Calculations

Garvey separately argues that his counsel was ineffective in failing to object to the inclusion of paragraphs 39 and 41 of the PSR in the calculation of his Criminal History category. Specifically, Garvey claims that he told his attorney that the release dates for his

convictions in paragraphs 39 and 41 of the PSR was actually November 12, 1993, but that his attorney did not properly object. This claim is flawed on a variety of levels.

As an initial matter, the government correctly notes that this claim is barred by the doctrine of procedural default, because Garvey could have, but did not, pursue it on direct appeal. When a defendant has procedurally defaulted a challenge by failing to raise error properly on direct appeal, the claim may be raised in a § 2255 motion only if the defendant can demonstrate (1) cause and prejudice, or (2) that he is "actually innocent" of the crime for which he was convicted. *See Bousley v. United States*, 523 U.S. 614, 622 (1998). Garvey has not attempted to demonstrate his actual innocence, nor could he on this record. Similarly, Garvey has identified no recognized exception to the procedural bar. Therefore, his claims are procedurally barred from review. *See Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992).

Additionally, Garvey has not established deficient performance by his sentencing counsel because Garvey's attorney *did* object on the basis that the release dates in paragraphs 39 and 41 were wrong, although those objections were unsuccessful. Under the guidelines, the Criminal History score counts: (1) "[a]ny prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instance offense"; and (2) "any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen year period." USSG § 4A1.2(e)(1). The measuring date for the commencement of Garvey's offenses was April 21, 2008, the earliest date of Garvey's four

controlled buys. (Dkt. #2, at 54, 56.) For a conviction *not* to be included in the criminal history score, the release date, therefore, had to have been before April 21, 1993.

As to paragraph 39, sentencing counsel objected, citing Garvey's belief that the release date was supposed to be June 12, 1994, but acknowledged that this was still after the April 21, 1993, cut-off date. Similarly, his counsel objected to paragraph 41, stating that Garvey believed his September 25, 1991, arrest date should be the starting point.

Now, Garvey claims that his release date for both convictions was actually November 12, 1993, but he continues to submit nothing in support. Instead, his story is even more attenuated, based on the claims that he told his sentencing counsel about "a phone call, where the person told [Garvey] the records had been purged but gave speculation of the date of release." (Dkt. #1, at 5.) This unsupported allegation neither establishes that his attorney knew the release dates for these convictions were wrong, nor that he was deficient in failing to include that dubious information in his objection. Finally, even if Garvey had been released on November 12, 1993 -- and his attorney knew as much -- there is no prejudice: a November 12, 1993, release date still falls after the 15-year threshold of April 21, 1993.[2]

Accordingly, Garvey established neither prong of the *Strickland* analysis, and his argument fails.

### III. Certificate of Appealability

Under Rule 11 of the Rules Governing Section 2255 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to petitioner. To

---

[2] Although in his reply brief, Garvey offers various other release dates for these convictions, he provides no factual support for those possible dates either. Regardless, none of his suggested release dates fell before April 21, 1993.

obtain a certificate of appealability, the applicant typically must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Tennard v. Dretke*, 542 U.S. 274, 282 (2004). Where denial of relief is based on procedural grounds, the petitioner must also show that "jurists of reason . . . would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Generally, this means that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted).

Although the rule allows a court to ask the parties to submit arguments on whether a certificate is warranted, it is not necessary to do so here because the record was adequate to resolve the claims for relief this case. Because reasonable jurists would not debate whether a different result was required, no certificate of appealability will issue.

## ORDER

IT IS ORDERED that:

1. The motion to vacate, set aside or correct sentence filed by defendant Eric Edward Garvey is DISMISSED.

2. A certificate of appealability is also DENIED. If defendant wishes he may seek a certificate from the court of appeals under Fed. R. App. P. 22.

Entered this 10th day of May, 2016.

BY THE COURT:
/s/
WILLIAM M. CONLEY
District Judge